## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**CARRIE A. LACY,**

      **Plaintiff,**

**vs.**                        **Case No.  5:12-CV-327-MW/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's applications for a period of disability and Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  After careful consideration of the entire Record, it is recommended that the decision of the Commissioner be affirmed.

## I.  Procedural History of the Case

On or about June 11, 2009, Plaintiff, Carrie A. Lacy, filed a Title II application for a period of disability and DIB and a Title XVI application for SSI alleging disability beginning October 15, 2004.  R. 13, 166-175.  (Citations to the Record shall be by the symbol "R." followed by a page number that appears in the lower right corner.)

Plaintiff's date last insured, or the date by which his disability must have commenced in order to receive DIB under Title II, is December 31, 2008. R. 13.

Plaintiff's applications were denied initially on July 30, 2009, and upon reconsideration on March 23, 2010. R. 98-103, 105-08. On April 26, 2010, Plaintiff requested a hearing. R. 109. On May 5, 2011, Plaintiff appeared and testified at a hearing conducted in Tallahassee, Florida, by Administrative Law Judge (ALJ) Amy Uren. R. 13, 24, 37-64. Vicky H. Pratton, an impartial vocational expert, testified during the hearing. R. 13, 65-70, 159-60 (Resume). Plaintiff was represented by David E. Evans, an attorney. R. 13, 30, 32, 97.

On May 26, 2011, the ALJ issued a decision and denied Plaintiff's applications for benefits concluding that Plaintiff was not disabled from October 15, 2004, through the date of the ALJ's decision. R. 24. On July 5, 2011, Plaintiff requested review of this decision, which included a one-page permanent impairment determination. R. 7-9, 389. The Appeals Council denied review on August 10, 2012. R. 1-5.[1] The ALJ's decision stands as the final decision of the Commissioner.

On October 10, 2012, Plaintiff filed a Complaint with the United States District Court seeking review of the ALJ's decision. Doc. 1. The parties filed memoranda of law, docs. 18 and 19, which have been considered.

## II. Findings of the ALJ

---

[1] The Appeals Council stated that this one-page certificate form was "signed by illegible source, dated received July 5, 2011." R. 4, 9. This document also appears in the Record, R. 83, with several other Workers' Compensation-related documents from 2002. R. 80-95. There is mention in the Record that Plaintiff's benefits ended on September 29, 2003. R. 168. There is another note indicating that Plaintiff's Workers' Compensation case is pending. R. 172.

The ALJ made several findings relative to the issues raised in this appeal:

1. The claimant was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date; has at least a high school education; and is able to communicate in English.  R. 23.

2. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2008."  R. 15.

3. "The claimant has not engaged in substantial gainful activity since October 15, 2004, the alleged onset date."  *Id.*

4. "The claimant has the following severe impairments prior to the date last insured: status post repair of multiple incisional ventral hernias and tobacco abuse.  Subsequent to the date last insured, the claimant additionally had the following severe impairments:  coronary artery disease, status post myocardial infarction and stent placement; major depressive disorder with pain disorder; and anxiety disorder."  *Id.*

5. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 16.

6. "[T]he claimant has the residual functional capacity [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) such that she can lift/carry less than 10 pounds frequently and 10 pounds occasionally; and must have work which is simple, repetitive work, consistent with a specific vocational preparation [SVP] of 1 or 2."  R. 18.

7. "The claimant is unable to perform any past relevant work."  R. 22.

8. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform."  R. 23.

9. "The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2004, through the date of this decision."  R. 31.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); <u>accord Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. <u>Moore</u>, 405 F.3d at 1211.[2]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1509, 416.909 (duration

requirement).  Both the "impairment" and the "inability" must be expected to last not less

than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is

not disabled.  If the claimant carries this burden, however, the burden shifts to the

Commissioner at step five to establish that despite the claimant's impairments, the

claimant is able to perform other work in the national economy in light of the claimant's

RFC, age, education, and work experience. <u>Phillips</u>, 357 F.3d at 1237; <u>Jones v. Apfel</u>,

190 F.3d 1224, 1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>,

786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), (e) & (g),

416. 920(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must

prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v.</u>

<u>Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

**IV.  Legal Analysis**

**A.  Issues Presented**

Plaintiff argues that the ALJ erred when she found that Plaintiff had the RFC to

perform sedentary work when, according to Plaintiff, there was confusion regarding

whether the ALJ's finding actually meant that Plaintiff could perform less than sedentary

work in light of the lift and carry weight restrictions.  Doc. 18 at 5-8.  The Commissioner

responds that Plaintiff is mistaken in that the ALJ's finding that Plaintiff lacked the RFC

to perform a full range of sedentary work referred to Plaintiff's nonexertional limitations

that were accounted for in the hypothetical questions posed to the vocational expert and

in the ALJ's ultimate RFC assessment.  Doc. 19 at 11-12.

**B.  Substantial Evidence Supports the ALJ's RFC Assessment[3]**

The ALJ found that Plaintiff had the RFC to perform sedentary work "such that

she can lift/carry less than 10 pounds frequently and 10 pounds occasionally; and must

have work which is simple, repetitive work, consistent with a [SVP] of one or two."

---

[3]  The RFC is the most a claimant can do despite the limitations.  20 C.F.R. §§
404.1545(a)(1), 416.945(a)(1).

R. 18. In order to make this finding, the ALJ considered the relevant medical evidence. R. 18-22. Plaintiff does not quarrel with the ALJ's summary of the evidence and, as a result, the ALJ's findings are incorporated herein. *Id.*

The ALJ begins her discussion of the medical evidence with Plaintiff's examination by M. Hytham I. Beck, M.D., in January 2003 for abdominal bulges. Dr. Beck assessed multiple incisional ventral hernias and scheduled Plaintiff for laparoscopic repair and lysis of adhesions. R. 19, 267-68. Plaintiff underwent surgical repair. Plaintiff returned to Dr. Beck in May 2003 and was diagnosed with another abdominal wall hernia. It appears laparoscopic surgery was performed and Dr. Beck informed Plaintiff that she had no recurrent hernia. R. 19, 270-71. Plaintiff returned in August 2003 complaining of a recurrent abdominal bulge and Dr. Beck saw no hernias. He opined she could return to work and he recommended that Plaintiff seek another opinion which she did in and around September 2003, when she returned to Dr. Beck stating that an unnamed doctor observed a hernia. Dr. Beck did not feel any hernia upon examination. He released Plaintiff to full time duty. R. 19, 271, 273. The ALJ gave Dr. Beck's opinion great weight that Plaintiff could return to work without restriction, other than the use of an abdominal binder, and because Dr. Beck was Plaintiff's treating physician with a specialty in general surgery. R. 19.

The ALJ notes that "[t]here is a considerable gap in treatment after 2003. The medical record shows no complaint of or treatment for abdominal pain until years later, in January of 2008 (2F1). Moreover, the objective findings do not fully support the claimant's allegations regarding abdominal issues." R. 19, 274. The ALJ mentions a CT scan performed in January 2008 that "confirmed the abdominal wall hernia repair,

but yielded negative results for soft tissue hernia, focal mass, or adenopathy, and was otherwise an unremarkable study. Further, the claimant's CT scan of the pelvis yielded negative results aside from the incidental finding of the possibility of an adnexal cyst (2F)." R. 20, 274-76.

The ALJ's consideration of the medical evidence then picks up with Plaintiff's visit to the Gulf Coast Clinic in early 2009. "Treatment notes from Gulf, dated February 11, 2009, *after her date last insured*, indicate that the claimant reported to the provider that Dr. Beck repaired her hernias, and that she returned to 'the same job.' This statement is inconsistent with her later testimony that she last worked in 2003." R. 20, 284. (emphasis added).[4]

In May 2009, Plaintiff presented to the emergency department with the chief complaint of left upper abdominal pain, reportedly triggered by sneezing, which she felt caused another hernia. R. 20, 289. Frank Fannin, M.D., found no hernias. A CT scan was recommended, but it appears that Plaintiff did not undergo a CT scan. Dr. Fannin did not authorize any work absences and stated Plaintiff is "'able to return to work' (4F13)." R. 20, 297. The ALJ assigned Dr. Fannin's opinion great weight. According to the ALJ no further abdominal complaints are noted through the remainder of 2009. R. 20.

The ALJ summarizes statements (in 2009) from Plaintiff's mother regarding Plaintiff's activities of daily living and further notes that Plaintiff told Dr. Horvat during a

---

[4] Plaintiff states that her claim for SSI was "denied for resource issues, and this claim may be refiled in the future." Doc. 18 at 1. There is no cite to the record. *Id.* It appears Plaintiff is only pursuing her claim for DIB. *Id.* The ALJ denied both applications, however, R. 24, and the Commissioner does not discuss this matter. Doc. 19 at 2-3. In order to obtain DIB benefits, Plaintiff must establish disability on or before December 31, 2008. R. 13.

consultative examination "that she enjoyed painting, fishing, working outdoors, crafts, swimming, and being with her family (10F)." R. 20, 215-18, 234-41, 320-21. The ALJ found this statement consistent with the medical record "and indicates the claimant had a good level of functioning, one that is inconsistent with disability, after her hernia repair and *through her date last insured*. Further, the claimant did not complain of or seek treatment for her abdominal condition after May 2009, according to the record." *Id.* (emphasis added).

In November 2009, Plaintiff presented to the emergency department complaining of chest pain accompanied by shortness of breath. Hari Baddigam, M.D., a cardiologist, admitted Plaintiff to cardiology for further evaluation. R. 21, 331-32. Plaintiff underwent a "same-day heart catheterization, ventriculography, and aspiration thrombectomy, with temporary pacemaker placement and two bare metal state [sic] placements" performed by Joey Trantham, M.D., "to treat an acute inferior infarction (11F; 14F5)." R. 21, 327-31, 358-59, 364-69. Plaintiff's ejection fraction at surgery and improvement the following day were noted. *Id.* Plaintiff returned for a follow-up office examination with Carla Dorsch, ARNP-C (associated with Dr. Baddigam) in December 2009, but denied chest pain, angina, or palpitations. R. 21, 362. Self-reported improvement was noted by the ALJ. R. 21.

A repeat Doppler echocardiogram performed in February 2010, "yielded generally mild or negative results." R. 21, 370. The ALJ noted that Nurse Dorsch evaluated Plaintiff in March 2010 "and noted improvement of the claimant's left ventricular function, despite the claimant's report that she continued to smoke ½ a pack of cigarettes a day." R. 21, 360-61. Plaintiff reported being out of Coreg and Nurse

Dorsch instructed Plaintiff to restart Coreg, the dosage was increased, and Plaintiff was told to follow-up with Dr. Baddigam in six months or sooner if necessary. *Id.* The ALJ noted that the record did not contain evidence that she followed-up with Dr. Baddigam or any other providers. R. 21.

The ALJ mentions a telephone call with the agency in March 2010 when Plaintiff reported being "'a bit stronger,' 'able to sustain ADLs [activities of daily living] for longer periods,' and 'no longer experiencing chest pains,' although she stated that her hernia condition remained the same." R. 21, 251. The ALJ also considered the March 23, 2010, Physical RFC Assessment performed by John A. Dawson, M.D. R. 21-22, 374-81. The ALJ noted that Dr. Dawson

> assessed insufficient medical evidence to render a medical determination of the claim (15F) [R. 373]. Evidently, Dr. Dawson did not have the medical documentation relating to the claimant's cardiac impairments at the time he issued the insufficient evidence determination, because later that same day, he completed a [RFC] assessment of the claimant. He opined the claimant is capable of sedentary-to-light work, with the ability to lift/carry up to ten pounds and stand/walk/sit for six hours of an eight hour workday (16F) [R. 374-81].[5]

> In so finding, Dr. Dawson noted the claimant's self-reported improvement, and her activities of daily living, including driving, light food preparation, light cleaning, small loads of laundry, and independence and personal care, as roughly compatible with the assessed [RFC], and I concur [R. 379]. Accordingly, I afford great weight to Dr. Dawson's opinion regarding the claimant's physical capacity as consistent with the evidence (SSR 96-6p, 16F). Further, in giving the claimant every benefit of the doubt, I have reduced her physical exertion level to a full range of sedentary work, which restricts her standing and walking to 2 hours of an eight hour workday, as opposed to six hours.

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the

---

[5] Dr. Dawson referred to a March 2010 examination with Dr. Baddigam-Cardiology Associates. R. 376; *see* R. 21, 360-61 (March 8, 2010, examination with Nurse Dorsch). Dr. Dawson found that Plaintiff could *occasionally* lift and/or carry 10 pounds and *frequently* lift and/or carry less than 10 pounds, R. 375, which is consistent with the ALJ's RFC finding. R. 18.

claimant by the treating physician.  Yet a review of the record in this case reveals no restrictions recommended by the treating physician.

On whole, the record evidence supports the claimant's ability to perform sedentary, unskilled work, consistent with a [SVP] of 1 or 2.  Objective findings, clinical signs, and the claimant's multiple reports of improvement following uncomplicated hernia repairs, and heart catheterization and stent placements, are consistent with her ability to perform sedentary work.  Further, the restriction to unskilled work accommodates the claimant's alleged difficulty maintaining attention and concentration, as noted by Dr. Horvat.  I note that no physician has opined the claimant is disabled.

In sum, the above [RFC] assessment is supported by the medical evidence of record, the medical source opinions of Dr. Dawson and treating physician Dr. Beck, the claimant's self-reported activities of daily living, and my assessment of the credibility of her allegations.

R. 21-22, 374-81.

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling (SSR) 96-9p, 1996 SSR

LEXIS 6, at *8-9 (July 2, 1996).  SSR 96-9p provides guidance for determining the

capacity to do other work and the implications of an RFC for less than a full range of

sedentary work.  1996 SSR LEXIS 6, *1.[6]  Under the section "exertional limitations and

restrictions," guidance is provided regarding several topics, and relevant here,

"lifting/carrying and pushing/pulling," which states:

*If an individual is unable to lift 10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday, the unskilled sedentary occupational base will be eroded.*  The extent of erosion will depend on the extent of the limitations.  For example, if it can be determined that the individual has an ability to lift or carry slightly less than 10 pounds, with no other

_____

[6]  The ALJ refers to SSR 96-6p and other SSR's when determining Plaintiff's RFC.  R. 18, 22.  SSR 96-6p pertains to consideration of administrative findings of fact by consultants.

limitations or restrictions in the ability to perform the requirements of sedentary work, the unskilled sedentary occupational base would not be significantly eroded; however, an inability to lift or carry more than 1 or 2 pounds would erode the unskilled sedentary occupational base significantly.  For individuals with limitations in lifting or carrying weights between these amounts, consultation with a vocational resource may be appropriate.

Limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base.

*Id.* at *16-17 (emphasis added).  This SSR is the only authority Plaintiff cites in support

of her argument.  *See* Doc. 18 at 6.

During the hearing, the ALJ inquired of Ms. Pratton, the vocational expert.  R. 64-

70.  Ms. Pratton reviewed Plaintiff's past relevant work.  R. 65-68.  Relevant here, the

ALJ and Ms. Pratton had the following colloquy:

Q  All right.  If you would please assume an individual the same age, educational and vocational background of the claimant who is capable of sedentary work *who can occasionally lift and carry less than 10 pounds, can frequently -- I'm sorry, can frequently lift and carry 10 pounds, must have work which is limited to simple repetitive work consistent with the specific vocational preparation of one and two.*  Could such an individual be capable of the claimant's past work?

A  No, your Honor, because of the sedentary work level.

Q  All right, would there be other work available in the national economy to such an individual?

A  Yes, your honor.  The first sedentary job is surveillance system monitor, DOT code 369.367-010, has an SVP of 2, national employment figures, 21,254, Florida employment figures 1,918.  The next one is addresser or addressing clerk, it's also sedentary, DOT code 209.587-010, SVP of 2, national employment figures 71,694, Florida employment figures 3,196.

R. 68 (emphasis added).[7]  The quoted emphasized language is worded differently than

the ALJ's RFC finding and the findings of Dr. Dawson.  The findings of the ALJ and

---

[7]  The ALJ asked two additional hypothetical questions pertaining to the effect on ability to work because of absences from work during a month and potentially required

Dr. Dawson are the same, however. *Compare* R. 18 *with* R. 375. The lift/carry portion

of the ALJ's RFC assessment assumes Plaintiff can do less than the hypothetical posed

to Ms. Pratton, but remains within the parameters for sedentary work consistent with

20 C.F.R. §§ 404.1567(a), 416.967(a) and SSR 96-9p. In addition, the ALJ reduced

Plaintiff's physical exertion level to a full range of sedentary work, which restricted her

standing and walking to two hours of an eight-hour workday, as opposed to six hours.

R. 22.[8] (Dr. Dawson opined Plaintiff could stand or walk with normal breaks about six

hours in an eight-hour workday. R. 375.) The ALJ also accounted for Plaintiff's

nonexertional limitations of engaging in work by limiting work to simple, repetitive

unskilled work. R. 18, 22.[9]

The ALJ determined that Plaintiff can occasionally lift/carry 10 pounds and

frequently lift/carry less than 10 pounds. R. 18. The ALJ did not determine that Plaintiff

was unable to lift 10 pounds. Thus, the ALJ's lift/carry weight limitations did not meet

the threshold inquiry requirements of SSR 96-9p. This case does not involve a person

who is restricted to lifting and carrying less than 10 pounds and no more than a pound

---

additional breaks during the workday. R. 69-70. Plaintiff's representative did not ask
Ms. Pratton any questions. R. 65-70.

[8] "Jobs are sedentary if walking and standing are required occasionally and
other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[9] "Unskilled sedentary work also involves other activities, classified as
'nonexertional,' such as capacities for seeing, manipulation, and understanding,
remembering, and carrying out simple instructions." SSR 96-9p, 1996 SSR LEXIS at
*9. "Unskilled work is work which needs little or no judgment to do simple duties that
can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a),
416. 968(a). A SVP of 2 means "[a]nything beyond short demonstration up to and
including 1 month." Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991),
Appendix C: Components of the Definition Trailer, § II, SVP. "Occasionally" means:
"activity or condition exists up to 1/3 of the time." DOT at § IV Physical Demands-
Strength Rating; *see also* SSR 96-9p, 1996 SSR LEXIS at*8-9. "Frequently" means:
"activity or condition exists from 1/3 to 2/3 of the time." *Id.*

or two.  In light of the ALJ's RFC lift/carry restrictions, it was not necessary for the ALJ

to further determine whether Plaintiff can also lift and carry docket files, ledgers, and

small tools or whether Plaintiff was unable to lift and carry more than 1 or 2 pounds.

The ALJ, after consulting with Ms. Pratton, determined that Plaintiff could perform

jobs as a surveillance systems monitor and addresser or addresser clerk, with a SVP of

2 consistent with the ALJ's RFC determination.  R. 18, 24, 68; *see supra* n.9.  The <u>DOT</u>

defines these jobs:

> 379.367-010 **SURVEILLANCE-SYSTEM MONITOR** (government ser.)
>
> Monitors premises of public transportation terminals to detect crimes or
> disturbances, using closed circuit television monitors, and notifies authorities by
> telephone of need for corrective action: Observes television screens that transmit
> in sequence views of transportation facility sites.  Pushes hold button to maintain
> surveillance of location where incident is developing, and telephones police or
> other designated agency to notify authorities of location of disruptive activity.
> Adjusts monitor controls when required to improve reception, and notifies repair
> service of equipment malfunctions.
> GOE: 04.02.03 STRENGTH: S GED: R3 M1 L3 SVP: 2 DLU: 86
>
> 209.587-010 **ADDRESSER** (clerical) alternate titles: addressing clerk; envelope
> addresser
>
> Addresses by hand or typewriter, envelopes, cards, advertising literature,
> packages, and similar items for mailing. May sort mail.
> GOE: 07.07.02 STRENGTH: S GED: R2 M1 L2 SVP: 2 DLU: 77

*See* www.oalj.dol/PUBLIC/DOT/REFERENCES/DOT038B.HTM (379.367-010) and

www.oalj.dol/PUBLIC/DOT/REFERENCES/DOT02A.HTM (209.587-010).  These are

unskilled, sedentary jobs.  R. 22; *See supra* nn.8 & 9.

The ALJ considered Plaintiff's impairments and the severity of those impairments

in light of her testimony, the medical evidence, and other evidence.  The ALJ explained

the bases for her decision.  The Commissioner met her burden at step five of the

sequential evaluation process by demonstrating that Plaintiff has the RFC to perform

work (two jobs) in the national economy at the sedentary level.  Based on the foregoing, substantial evidence supports the ALJ's RFC determination.[10]

## V. Conclusion

Considering the Record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED.**

IN CHAMBERS at Tallahassee, Florida, on August 14, 2013.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[10]   *See* <u>Callens v. Astrue</u>, No. 2:11-CV-01553-LSC, 2012 U.S. Dist. LEXIS 115043, at *18-19 (N.D. Ala. Aug. 15, 2012) (affirming ALJ's determination that claimant had RFC for sedentary work based on exertional limitations consisting of lifting ten pounds, standing or walking for two hours in an eight hour workday, and sitting for six hours in an eight hour workday and further capable of understanding, remembering and carrying out simple, unskilled work).  In <u>Callens</u>, the ALJ used the Medical-Vocational Guidelines (the "Grids") Rule 201.28 rather than the testimony of a vocational expert. The court further concluded that "[b]ecause Plaintiff's [nonexertional] limitations do not significantly limit Plaintiff's basic work skills, the ALJ did not err by finding him 'not disabled' under the framework of Medical-Vocational Rule 201.28." *Id.* at *20.  Here, the ALJ considered Rule 201.28, but consulted with a vocational expert to determine the extent that "additional limitations" eroded the unskilled sedentary occupational base. R. 23-24.